## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| BRENT D. HOLMES, On Behalf | ) | |
| of Himself and All Others Similarly | ) | |
| Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | CIVIL NO. 2:21-cv-02093-CSB-EIL |
| | ) | |
| INMAR, INC., a/k/a | ) | |
| INMAR INTELLIGENCE, INMAR | ) | |
| BRAND SOLUTIONS, INC. and | ) | |
| W. J. DEUTSCH SPIRITS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Now comes the Plaintiff Brent D. Holmes ("Plaintiff"), on behalf of himself and all others similarly situated, by H. Kent Heller of Heller of Heller, Holmes & Associates, P.C., his attorneys, and for his class action Complaint against the Defendants Inmar, Inc., a/k/a Inmar Intelligence, Inmar Brand Solutions, Inc. and W. J. Deutsch Spirits, LLC, says:

**FACTS COMMON TO ALL COUNTS**

1. At all times herein mentioned, the Plaintiff Brent D. Holmes (hereinafter referred to as "Holmes") has resided in Mattoon, Coles County, Illinois.

2. At all times herein mentioned, the Defendant Inmar, Inc., also known as Inmar Intelligence (hereinafter referred to as "Inmar") is a foreign corporation and has purposefully directed its activities at the State of Illinois and has targeted Illinois consumers.

3. At all times herein mentioned, the Defendant Inmar Brand Solutions, Inc., also known as Inmar Intelligence, (hereinafter referred to as "IBS") is a foreign corporation which has purposefully directed its activities at the State of Illinois and has targeted Illinois consumers.

1

4. Upon information and belief, Inmar and IBS have been conducting their operations as a single consolidated entity and have held themselves out to the public using the assumed name of "Inmar Intelligence."

5. Upon information and belief, Inmar and IBS are inextricably intertwined in their operations as it concerns the administration of the wine rebate programs described herein.

6. Upon information and belief, IBS is a wholly owned subsidiary of Inmar, carrying out is business activities directed toward Illinois consumers on behalf of or as an agent of Inmar.

7. At all times herein mentioned, the Defendant W.J. Deutsch Spirits, LLC (hereinafter referred to as "Deutsch") is a foreign corporation which has purposefully directed its activities at the State of Illinois and has targeted Illinois consumers.

8. At all times herein mentioned, Deutsch has marketed and distributed at retail wines and alcoholic spirits that have been produced around the world, including but not limited to Yellow Tail wines.

9. Upon information and belief, at all relevant times, Deutsch has caused to be developed and marketed to Illinois consumers multiple wine and alcoholic spirits rebate programs for wines and alcoholic spirits which it markets and distributes to Illinois consumers at retail.

10. Upon information and belief, during the relevant times herein, these rebate programs have included Yellow Tail wines as well as other wines and alcoholic spirits which are marketed and distributed to Illinois consumers at retail by Deutsch.

11. Deutsch also uses the name "Deutsch Family Wine & Spirits".

12. At all times herein mentioned, the Defendants Inmar and IBS have collaborated with Deutsch and other distributors and sellers of merchandise to Illinois consumers at retail.

13. These activities, which are purposefully directed at the State of Illinois and target Illinois consumers, include the creation, planning, marketing, solicitation and administration, processing and payment or denial of consumer rebates for wine and other merchandise purchased at retail stores throughout Illinois.

14. These rebate programs collectively amount to hundreds of thousands of dollars or more on an annual basis to Illinois consumers.

15. Within the three-year period immediately preceding the filing of the initial Complaint in this case on March 19, 2021 in Illinois state court, Inmar and/or IBS directly contacted 137,380 Illinois consumers and specifically advised these consumers that their rebate submissions were deemed "invalid."

16. These submissions by Illinois consumers which were rejected by Inmar and/or IBS, on their own accord or as agent of Deutsch, totaled between $1,130,808.08 (minimum face value of rebate range) and $4,726,998.15 (maximum face value of the rebate range).

17. Upon information and belief, during the same three-year period, Inmar and/or IBS had direct interaction and contact with tens of thousands of Illinois consumers where Inmar and/or IBS paid rebates to these Illinois consumers, the paid rebates amounting to hundreds of thousands or perhaps millions of dollars.

18. At all times relevant herein, Deutsch has purposefully availed itself of the privilege of conducting business in Illinois and has purposefully directed its activities at the State of Illinois and has targeted Illinois consumers by distributing throughout the State of Illinois for purchase by Illinois consumers, at a minimum, hundreds of thousands of bottles of wine and alcoholic spirits.

19. Upon information and belief, at all times relevant herein, Deutsch has offered mail-in rebates at various times on the wine and other alcoholic spirits distributed throughout retail stores

in Illinois for purchase by Illinois consumers, specifically targeting these consumers to purchase their products which are accompanied by mail-in rebate offers.

20. These rebate offers are intended to entice Illinois consumers to purchase bottles of wine and other alcoholic spirits distributed by Deutsch, promising the consumer with a cash rebate if the consumer purchases the product covered by the rebate during the rebate period, and mails in the rebate form with the sales receipt.

21. Upon information and belief, at all times relevant herein, Inmar and/or IBS have conducted and administered multiple mail-in rebate programs targeted at Illinois consumers, not only involving merchandise distributed by Deutsch but also by manufacturers and distributors of other merchandise offered at retail to Illinois consumers.

22. During the period from June 1, 2019 to August 31, 2019, the Defendants targeted tens of thousands of Illinois consumers with a cash rebate offer involving the purchase of Yellow Tail bottles of wine.

23. The written rebate offer was printed on tags which were hung from the neck of the Yellow Tail wine bottles and solicited Holmes and other consumers to purchase anywhere from 3 to 12 bottles of Yellow Tail wine.

24. The solicitation stated that if the consumer purchased the quantity of wine listed on the rebate form, with a minimum of three bottles being purchased, and if the consumer provided a name and address and signed the original rebate form and mailed it to Inmar with the original register receipt showing the purchase made between June 1, 2019 to August 31, 2019, a check in payment of the rebate would be sent to the consumer.

25. The consumer had to be 21 years of age or older to qualify for the rebate.

26. Holmes was 21 years of age or older at all relevant times herein.

4

27. The law in Illinois requires that no retailer may sell alcohol to a consumer under the age of 21.

28. The retailer selling the Yellow Tail bottles of wine which contained the rebate offers, sold the bottles of wine only to consumers who were 21 years of age or older in accordance with Illinois law.

29. By being able to purchase the wine at retail outlets, Holmes and other similarly-situated consumers have presumptively established that they are at least 21 years of age.

30. On August 17, 2019, Holmes purchased six bottles of Yellow Tail wine at the County Market grocery store in Mattoon, Illinois, with the cost of the six bottles of wine being $35.94 plus 8.75% sales tax.

31. Holmes purchased the Yellow Tail specifically because of the mail-in-rebate offer which entitled him to $9.00 from the Defendants.

32. Holmes accepted the written rebate offer, purchased Yellow Tail wine bottles, paid for them, and sent the signed rebate form and cash register receipt to Inmar.

33. Defendants have not paid Holmes the promised $9.00 rebate and have otherwise failed to honor the promised cash rebate.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on his own behalf and on behalf of the following classes of consumers, described or categorized as follows:

(a)    All consumers who are in compliance with the terms of a mail-in rebate offer but for which the Defendants have failed or refused to pay the rebate.

(b)     All consumers who may have submitted a rebate form with a typographical error or scrivener's mistake and where the rebate was rejected by the Defendants without an opportunity to correct the scrivener's error or mistake.

(c)     All consumers who sent in the completed rebate form and original cash register receipt within the time frame of the rebate offer, but whose rebate was rejected because of a claimed issue or problem arising or pointed out by the Defendants after the initial submission period.

(d)     All consumers who were sent postcards or emails by Defendants, stating additional requirements beyond those required by the terms of the rebate offer and who thereby did not receive the promised rebate.

(e)     All consumers in the State of Illinois who have been wrongfully denied a promised mail-in cash rebate.

(f)     All consumers in states or at domestic military bases where the offer was valid as stated in the mail-in rebate offer form.

35. Excluded from the classes are Defendants, their subsidiaries and affiliates, each of their officers, directors, and members of their immediate family; any entity in which a Defendant has a controlling interest; the legal representatives, heirs, successors, or assigns of any such excluded party; alcoholic beverage licensees; all class members who may exclude themselves from the class; governmental entities, and all judges assigned to hear any aspect of this litigation, their immediate family members, and chamber staff.

36. Plaintiff reserves the right to modify or amend the definition of the proposed class and/or to add a sub-class(es) if necessary, before this Court determinates whether certification is appropriate.

6

37. Plaintiff stands ready and able to satisfy the requirements set forth in Federal Rule of Civil Procedure 23.

38. The members of the proposed classes are so numerous that joinder of all members is impractical. The exact number and identities of the members of the proposed classes are unknown at this time and can be ascertained only through appropriate discovery.

39. Defendants have the administrative ability through their computer systems, software programs which document the submissions made by consumers to the solicited mail-in rebate programs, and other records to identify all members of the classes, and such specific information is not otherwise available to Plaintiff.

40. Plaintiff is informed and believes that, based upon the size and scope of the mail-in rebate offers made by or administered by these Defendants on merchandise distributed and sold to Illinois consumers at retail, that the classes affected by Defendants' misconduct each consist of thousands of members.

41. The Defendants' conduct toward the Plaintiff and the classes raises common questions of law and fact that predominate over any questions affecting only individual members of the classes.

42. Plaintiff satisfies the commonality requirement because his claims arise from the practice that Defendants have applied all other similarly-situated putative class members, and because Plaintiff's claims are based on the same legal theories as all members of the classes, namely, that the Defendants have failed to honor and pay rebate submissions of consumers who have complied in material respects with the mail-in rebate offers targeted at them at retail stores.

43. Because the Defendants' conduct is the same or similar as to all class members, the material elements of Plaintiff's claims and those of the putative classes are subject to common proof, and the outcome of Plaintiff's individual actions will be dispositive for the classes.

44. The questions here are ones of common or general interest such as there is a well-defined community of interest among the members of the classes.

45. These questions predominate over questions that may affect only individual class members because the Defendants have acted on grounds generally available to the classes. Such common legal and factual questions include, but are not limited to:

(a)    Whether the Defendants have declined to honor the rebate offers that have been validly submitted by Illinois consumers and/or consumers in other states and domestic military bases.

(b)    Whether the Defendants imposed additional conditions not required by the express terms of the rebate offers as pretext or excuse to refuse payment to the consumer of the rebate.

(c)    Whether the Defendants arbitrarily and unilaterally refused to pay a rebate which was submitted within the applicable submission period, falsely claiming that an error or mistake discovered on the rebate form after the submission period could not be corrected or constituted grounds to refuse payment of the rebate.

(d)    Whether the conduct enumerated above violated the express terms of the offer which became a binding contract when the consumer accepted the terms of the offer and complied with the terms of the offer.

(e)    Whether any of the conduct is in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 *et seq*. and/or the consumer fraud acts of the states where the offer was valid.

(f)     Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing.

(g)     Whether such conduct is in bad faith; and

(h)     The appropriate measure of damages.

46. There are common answers to these questions so that they can be answered in one proceeding with respect to all class members.

47. These questions of law and fact predominate over any questions affecting only individual members of the classes.

48. Plaintiff will fairly and adequately represent and protect the interest of the classes as they arise from the same core practices. By proving his individual claims, Plaintiff will necessarily prove the claims of the classes and prove Defendants' liability to the classes.

49. Plaintiff has no known conflicts of interest with any members of the classes; his interests and claims are not antagonistic to those of any other class members; and his claims are not subject to any unique defenses.

50. Plaintiff's claims are typical of the claims of other class members in that they arise out of the same wrongful practices by the Defendants in denying validly-submitted mail-in rebate offers by Illinois consumers and/or consumers in other states. The material facts underlying the claims of each putative class member are the same material facts as those supporting Plaintiff's claims, Plaintiff and the other class members have sustained injuries from and are facing harm arising out of Defendant's common course of conduct as complained of herein. The losses of each class member were caused directly by Defendants' wrongful conduct alleged herein.

51. Plaintiff has retained counsel who is well-equipped and competent to handle cases involving numerous members, class action or otherwise. Plaintiff and his counsel are committed

to vigorously prosecuting this action on behalf of the classes and have the financial resources to do so.

52. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Because the classes encompass thousands of claim, a single class action is more efficient than thousands of individual actions, each requiring the same discovery and proof. Given the relatively small size of the claims of each class member, it is likely that absent class representation, such claims will not be brought, and the classes will never have appropriate redress for Defendants' improper conduct.

53. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of misconduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

54. Class treatment ensures uniformity and consistency in results, enables the many small claims of class members to be brought efficiently, and will provide relief to class members for their injuries and damages. It will also deter Defendants from engaging in such wrongful conduct in the future.

55. There are no unusual difficulties likely to be encountered in the maintenance of this action as a class action suit, as this Court can effectively manage the class action.

56. More specifically, the classes are not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual class members because Defendants keep records of the names and addresses of the consumers who submitted mail-in rebates – whether the submissions were rejected and the reason for each rejection, and records showing the submissions which were approved and paid and the amounts of such payment. Therefore, both the membership of the classes and the individual damages amounts are readily ascertainable from Defendants' records.

57. Thus, a class action is superior and more efficient to other available methods for the fair and efficient adjudication of this controversy. The damages of individual class members are inadequate to make individual litigation an economically-feasible means to seek redress for the Defendants' unlawful practices.

58. All conditions precedent to bringing this action have been satisfied and/or waived.

**COUNT I**
**COMMON LAW FRAUD**
**DEFENDANTS INMAR AND IBS**

59. Plaintiff incorporates the preceding allegations by reference as though fully set forth herein.

60. In connection with the solicitation of the mail-in rebate offer to Holmes and other similarly situated consumers, the Defendants engaged in the following acts of deception, fraud or the concealment, suppression or omission of material fact, in one or more of the following ways:

(a)     Concealed from Holmes and other similarly-situated consumers that it would not honor the rebate even though the purchase was made by persons who were legal drinking age (at or above the age of 21) and would have been prohibited from purchasing the wine at retail if they had not been of lawful age at the time of purchase.

(b)     Concealed from Holmes and others similarly-situated consumers that the rebate would not be honored if Defendant discovered any scrivener's error or mistake in the information on the rebate form.

(c)     Concealed from Holmes and other similarly-situated consumers that it would not allow the opportunity for the consumer to correct any scrivener's error or mistake made on the rebate form.

(d)     Concealed from Holmes and other similarly situated consumers that it would refuse payment of the rebate if a scrivener's error or mistake was discovered on the written submission after the end of the submission period even though the Defendant had received the mail-in rebate form prior to the expiration of the submission period.

(e)     Concealed from Holmes and other similarly-situated consumers that it would not pay a rebate even when Holmes and other similarly-situated consumers complied with all of the express terms of the rebate offer.

(f)     Concealed from Holmes and other similarly situated consumers that it would mail a postcard or email to the consumer who had sent in a rebate to Defendant or its agent, requiring the consumer to contact the Defendant or its agent by telephone as a further precondition to receiving the rebate.

(g)     Concealed from Holmes and other similarly situated consumers that additional terms and conditions would be imposed as a precondition to receiving the rebate.

(h)     Concealed from Holmes and other similarly situated consumers that if Defendant or its agent discovered a scrivener's error or a mistake on the rebate form, that the rebate would not be paid.

(i)     Concealed from Holmes and other similarly situated consumers that in the event any scrivener's error or mistake was made in filling out the rebate form, that Inmar would not provide the consumer the opportunity to correct the error.

(j)     Concealed from Holmes and other similarly situated consumers that the rebate would be honored if it was submitted within the time period contained in the rebate form, but would be refused if a question arose about the information contained on the rebate form after the last date for submission because the offer had allegedly "expired."

(k)     Concealed from Holmes and other similarly-situated consumers that Inmar would impose other requirements and conditions not stated on the rebate form after the consumer had made the retail purchase of the merchandise, and if those other conditions or requirements were not complied with, that no rebate would be paid.

(l)     Upon information and belief, concealed from Holmes and other similarly situated consumers that there was a monetary incentive for Defendant or its agents or its principal to not pay rebates submitted in accordance with the terms of the rebate offer.

61. The above-recited acts of misconduct on the part of the Defendant or its agent, acting within the scope and course of said agency, were undertaken with the intent that Holmes and other similarly situated consumers would rely upon such omissions of material facts and deceptive acts or practices.

62. The omissions of material facts and deceptive acts or practices were part of the scheme to defraud Holmes and other similarly situated consumers.

63. Holmes and other similarly situated consumers acted in detrimental reliance on the representations made on the written rebate offer that if the terms were complied with, the rebate would be paid.

13

64. Holmes and other similarly situated consumers acted in detrimental reliance upon the misrepresentations of material fact and concealment or omission of material fact by purchasing the bottles of Yellow Tail wine or other merchandise sold at retail which were the subject of the rebate offer.

65. As a direct and proximate result of the wrongful conduct on the part of the Defendant, Holmes has sustained damages in that he paid $35.94 plus 8.75% sales tax for the six bottles of Yellow Tail wine he purchased which he would not have purchased but for the enticement of the rebate offer, and he has not received the promised $9.00 cash rebate, and other similarly situated consumers have sustained similar damages.

WHEREFORE, the Plaintiff Brent D. Holmes on his own behalf and on behalf of other consumers similarly affected, pray that they will obtain judgment against the Defendants Inmar and IBS in an amount which will reasonably and fairly compensate all other similarly situated consumers for all actual damages sustained, and that punitive or exemplary damages will be assessed against the Defendants in an amount sufficient to punish the Defendants for their misconduct and to deter them and others from engaging in similar acts of misconduct, together with costs of suit, attorneys fees and other relief provided for in the Act.

**COUNT II**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT AND**
**CONSUMER FRAUD ACTS OF OTHER APPLICABLE STATES**
**DEFENDANTS INMAR AND IBS**

66. Plaintiff incorporates the preceding allegations contained in paragraph 1 - 65 by reference as if fully set forth herein.

67. This count is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.) (hereinafter referred to as "ICFA").

68. Section 2 of the ICFA provides in pertinent part as follows:

. . . Unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely on the concealment, suppression or omission of such material fact. . . in the conduct or trade of any commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

69. The aforedescribed misconduct on the part of the Defendants Inmar and/or IBS are in violation of Section 2 of ICFA.

70. Paragraph 10a of the Act provides that the plaintiff may recover his actual damages and any other relief which the Court deems proper, including punitive damage and reasonable attorney's fees and costs.

71. The aforesaid misconduct by Defendants is also in violation of the consumer fraud statutes of the other states where the rebate offers are valid.

WHEREFORE, the Plaintiff Brent D. Holmes on his own behalf and on behalf of other consumers similarly affected, pray that they will obtain judgment against the Defendants Inmar and IBS a/k/a Inmar Intelligence in an amount which will reasonably and fairly compensate Holmes and all other similarly situated consumers for all actual damages sustained, and that punitive or exemplary damages will be assessed against the Defendants in an amount sufficient to punish the Defendants for their misconduct and to deter them and others from engaging in similar acts of misconduct, together with costs of suit, attorney's fees and other relief provided for in the Act.

## COUNT III
## COMMON LAW FRAUD
## DEFENDANT DEUTSCH

72. Plaintiff incorporates the preceding allegations by reference as though fully set forth herein.

73. In connection with the solicitation of the mail-in rebate offer to Holmes and other similarly situated consumers, the Defendant engaged in the following acts of deception, fraud or the concealment, suppression or omission of material fact, in one or more of the following ways:

(a)    Concealed from Holmes and other similarly-situated consumers that it would not honor the rebate even though the purchase was made by persons who were legal drinking age (at or above the age of 21) and would have been prohibited from purchasing the wine at retail if they had not been of lawful age at the time of purchase.

(b)    Concealed from Holmes and others similarly situated consumers that the rebate would not be honored if Defendant discovered any scrivener's error or mistake in the information on the rebate form.

(c)    Concealed from Holmes and other similarly situated consumers that it would not allow the opportunity for the consumer to correct any scrivener's error or mistake made on the rebate form.

(d)    Concealed from Holmes and other similarly situated consumers that it would refuse payment of the rebate if a scrivener's error or mistake was discovered on the written submission after the end of the submission period even though the Defendant had received the mail-in rebate form prior to the expiration of the submission period.

(e)    Concealed from Holmes and other similarly situated consumers that it would not pay a rebate even when Holmes and other similarly situated consumers complied with all of the express terms of the rebate offer.

(f)    Concealed from Holmes and other similarly situated consumers that it would mail a postcard or email to the consumer who had sent in a rebate to Defendant or its agent, requiring the consumer to contact the Defendant or its agent by telephone as a further precondition to receiving the rebate.

(g)    Concealed from Holmes and other similarly situated consumers that additional terms and conditions would be imposed as a precondition to receiving the rebate.

(h)    Concealed from Holmes and other similarly situated consumers that if Defendant or its agent discovered a scrivener's error or a mistake on the rebate form, that the rebate would not be paid.

(i)    Concealed from Holmes and other similarly situated consumers that in the event any scrivener's error or mistake was made in filling out the rebate form, that Inmar would not provide the consumer the opportunity to correct the error.

(j)    Concealed from Holmes and other similarly situated consumers that the rebate would be honored if it was submitted within the time period contained in the rebate form, but would be refused if a question arose about the information contained on the rebate form after the last date for submission because the offer had allegedly "expired."

(k)    Concealed from Holmes and other similarly-situated consumers that Inmar would impose other requirements and conditions not stated on the rebate form after the consumer had made the retail purchase of the merchandise, and if those other conditions or requirements were not complied with, that no rebate would be paid.

(l)    Upon information and belief, concealed from Holmes and other similarly situated consumers that there was a monetary incentive for Defendant or its agents to not pay rebates submitted in accordance with the terms of the rebate offer.

74. The above-recited acts of misconduct on the part of the Defendant or its agent, acting within the scope and course of said agency, were undertaken with the intent that Holmes and other similarly situated consumers would rely upon such omissions of material facts and deceptive acts or practices.

75. The omissions of material facts and deceptive acts or practices were part of the scheme to defraud Holmes and other similarly situated consumers.

76. Holmes and other similarly situated consumers acted in detrimental reliance on the representations made on the written rebate offer that if the express terms were complied with, the rebate would be paid.

77. Holmes  and other similarly situated consumders acted in detrimental reliance upon the misrepresentations of material fact and concealment or omission of material fact by purchasing the bottles of Yellow Tail wine or other merchandise sold at retail which were the subject of the rebate offer.

78. As a direct and proximate result of the wrongful conduct on the part of the Defendant, Holmes has sustained damages in that he paid $35.94 plus 8.75% sales tax for the six bottles of Yellow Tail wine he purchased which he would not have purchased on that occasion but for the enticement of the rebate offer, and he has not received the promised $9.00 cash rebate, and other similarly situated consumers have sustained similar damages.

WHEREFORE, the Plaintiff Brent D. Holmes on his own behalf and on behalf of other consumers similarly affected, pray that they will obtain judgment against the Defendant Deutsch in an amount which will reasonably and fairly compensate all other similarly situated consumers for all actual damages sustained, and that punitive or exemplary damages will be assessed against the Defendants in an amount sufficient to punish the Defendants for their misconduct and to deter

them and others from engaging in similar acts of misconduct, together with costs of suit, attorneys fees and other relief provided for in the Act.

## COUNT IV

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AND CONSUMER FRAUD ACTS OF OTHER APPLICABLE STATES DEFENDANTS DEUTSCH

79. Plaintiff incorporates the preceding allegations contained in paragraph 1-78 by reference as if fully set forth herein.

80. This count is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.) (hereinafter referred to as "ICFA").

Section 2 of the ICFA provides in pertinent part as follows:

. . . Unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely on the concealment, suppression or omission of such material fact. . . in the conduct or trade of any commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

81. The aforedescribed misconduct on the part of the Defendant Deutsch are in violation of Section 2 of ICFA.

82. Paragraph 10a of the Act provides that the plaintiff may recover his actual damages and any other relief which the Court deems proper, including punitive damage and reasonable attorney's fees and costs.

83. The aforesaid misconduct by Defendant is also in violation of the consumer fraud statutes of other states where the rebate offers are valid.

WHEREFORE, the Plaintiff Brent D. Holmes on his own behalf and on behalf of other consumers similarly affected, pray that they will obtain judgment against the Defendant Deutsch in an amount which will reasonably and fairly compensate Holmes and all other similarly situated consumers for all actual damages sustained, and that punitive or exemplary damages will be assessed against the Defendants in an amount sufficient to punish the Defendants for their misconduct and to deter them and others from engaging in similar acts of misconduct, together with costs of suit, attorney's fees and other relief provided for in the Act.

<u>**COUNT V**</u>
<u>**BREACH OF CONTRACT**</u>
<u>**DEFENDANT DEUTSCH**</u>

84. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

85. Deutsch made a written rebate offer to the Plaintiff and all members of the proposed classes which written offer promised to pay the Plaintiff and similarly situated consumers a cash rebate if the consumer purchased a Deutsch product included in the rebate offer.

86. Plaintiff and other similarly situated consumers accepted the written offer by purchasing the bottles of wine, alcoholic spirits or other consumer products distributed by Deutsch which were covered by the rebate offer.

87. By accepting the terms of the written offer, a contract was formed between Deutsch and the Plaintiff and other similarly situated consumers who accepted the rebate offer.

88. Holmes and the other similarly situated consumers have complied with the terms on their part to be complied with under the terms of the contract.

89. Deutsch has breached the contract by failing and refusing to pay the cash rebate to Holmes and other similarly situated consumers in accordance with the amount of Deutsch product which was purchased and the amount of cash rebate to be paid for the purchase.

90. Deutsch has breached the implied covenant of good faith and fair dealing in refusing to pay the rebates.

91. Plaintiff and other similarly situated consumers have sustained damages by reason of the breach of contact in that they have not received the promised cash rebate and, in addition, spent money for purchasing the Deutsch product which they would not have purchased but for the enticement of the cash rebate offer.

WHEREFORE, the Plaintiff Brent D. Holmes, on his behalf and all other similarly situated Illinois consumers prays that he may have judgment against the Defendant Deutsch for the amount of the damages so sustained and for such other and further relief as may be appropriate.

**COUNT VI**
**BREACH OF CONTRACT**
**DEFENDANTS INMAR AND IBS**

92. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

93. Inmar and/or IBS made a written rebate offer to the Plaintiff and all members of the proposed classes which written offer promised to pay the Plaintiff and similarly situated consumers a cash rebate if the consumer purchased a product included in the rebate offer.

94. Plaintiff and other similarly situated consumers accepted the offer by purchasing the bottles of wine, alcoholic spirits or other consumer products which were covered by the rebate offer.

95. By accepting the terms of the written offer, a contract was formed between Inmar/IBS and the Plaintiff and other similarly situated consumers who accepted the rebate offer.

96. Holmes and the other similarly situated consumers have complied with the terms on their part to be complied with under the terms of the contract.

97. Inmar/IBS has breached the contract by failing and refusing to pay the cash rebate to Homes and other similarly situated consumers in accordance with the amount of product which was purchased and the amount of cash rebate to be paid for the purchase.

98. Inmar/IBS has breached the implied covenant of good faith and fair dealing in refusing to pay the rebates.

99. In the alternative Inmar/IBS acted as agent for Deutsch and other distributors of merchandise which was the subject of a rebate offer and Inmar/IBS exceeded its authority in rejecting payment of valid rebate offers or took an active part in violating a duty that Deutsch or other merchandise distributor owed to the Plaintiff and other consumers similarly situated by refusing to pay the valid rebate submissions.

100. Plaintiff and other similarly situated consumers have sustained damages by reason of the breach of contract in that they have not received the promised cash rebate and, in addition, spent money for purchasing the Deutsch product or other merchandise from a different distributor which they would not have purchased but for the enticement of the cash rebate offer.

WHEREFORE, the Plaintiff Brent D. Holmes, on his behalf and all other similarly situated Illinois consumers prays that he may have judgment against the Defendants Inmar and IBS for the amount of the damages so sustained and for such other and further relief as may be appropriate.

## **JURY DEMAND**

Plaintiff Demands Trial by Jury.

BRENT D. HOLMES, Plaintiff,

By: <u>H. Kent Heller</u>

H. KENT HELLER
HELLER, HOLMES & ASSOCIATES, P.C.
1101 Broadway Avenue
P. O. Box 889
Mattoon, IL 61938
Phone: 217-235-2700
Fax: 217-235-0743
kent@hhlawoff.com
holmes 22947 5.19.22 amended complaint

## **CERTIFICATE OF SERVICE**

I certify that on the 2nd day of June, 2022, the foregoing was electronically filed via Odyssey eFileIl, and on the same date a copy of the foregoing was served by the following means to the individuals listed below:

___ Deposited in the United States mail at Mattoon, Illinois at 5:00 o'clock, in an envelope securely sealed, postage prepaid and legibly addressed as follows:

___Hand delivered

 X  Transmitted via e-mail by the Court's electronic filing system or by email to the designated e-mail address of record for:

> Jason M. Wenker, jwenker@kilpatricktownsend.com
> Christin J. Jones cjones@kilpatricktownsend.com
> John P. Heil, Jr., JHeil@heylroyster.com
> Bryan J. Vayr, BVayr@heylroyster.com

> /s/ H. Kent Heller_____ _____

Subscribed and sworn to before me
this 2nd day of June, 2022.

 /s/  Sharon L. Raboin_____
Notary Public