## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **BRENT D. HOLMES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 21-CV-2093** |
| **v.** | ) | |
| | ) | |
| **INMAR BRAND SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>ORDER</u>

Multiple motions are pending before the court. First is Defendant Inmar Brand Solution's Motion for Summary Judgment (#112), to which Plaintiff Brent D. Holmes filed a Response (#120) on August 5, 2024. Defendant filed its Reply (#123) on August 19, 2024. Second is Plaintiff's Motion for Summary Judgment (#117), to which Defendant filed a Response (#121) on August 5, 2024.[1] Plaintiff filed his Reply (#124) on August 19, 2024. Defendant filed a Surreply (#126) on August 28, 2024. Third is Defendant's Motion for Sanctions (#132), to which Plaintiff filed a Response (#135) on November 12, 2024. Defendant filed a Reply (#138) on November 21, 2024.

For the following reasons, Defendant's Motion for Summary Judgment (#112) is GRANTED, Plaintiff's Motion for Summary Judgment (#117) is DENIED, and Defendant's Motion for Sanctions (#132) is GRANTED.

---

[1] Plaintiff also filed a Motion to File Documents Under Seal (#115), which is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court is tasked with deciding, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Summary judgment is appropriate only where the evidence is such that no reasonable jury could return a verdict in the nonmovant's favor. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). In other words, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the court's favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). Likewise, the court "need not accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010) (emphasis in original).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge*, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in

a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).

Rule 56 requires the entry of summary judgment, after adequate time for discovery, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

> A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. [*Celotex*, 447 U.S.] at 323. The moving party may discharge its initial responsibility by simply "'showing' — that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the nonmoving party has the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323.
>
> Once a properly supported motion for summary judgment is made, the nonmoving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. [*Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006)]. Instead, it must come forward with specific facts showing that there is a genuine issue for trial; raising some metaphysical doubt as to the material facts is not enough. [*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)]. Conclusory allegations, if not supported by the record, will not preclude summary judgment. *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)).

*George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 846-47 (N.D. Ill. 2011).

"When parties file cross-motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other." *In re Aon Corp. Wage & Hour Emp. Pracs. Litig.*, 2011 WL 248448, at *2 (N.D. Ill. Jan. 26, 2011) (citing *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944)); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008), abrogated on other grounds by *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) (noting that cross-motions for summary judgment "are treated separately"). Cross-motions for summary judgment are evaluated under the ordinary standards for summary judgment. See *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

<u>The Parties' Motions</u>

Both parties move for summary judgment on the two remaining counts of the Amended Complaint: (1) breach of contract (Count VI), and (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 et seq. ("ICFA") (Count II). Plaintiff bears the burden of proof at trial on his claims. Accordingly, in his Motion he must show that there are no genuine disputes of material fact, and make a sufficient showing of evidence to establish each essential element of both his remaining claims. See *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322).

On the other hand, Defendant only needs to establish that Plaintiff *cannot* make a sufficient showing on any *one* essential element to his case. See *id.* Defendant's Motion is consequently narrower. Because Plaintiff cannot make a sufficient showing on the

elements (as addressed below), which requires that judgment be entered in favor of Defendant on both remaining claims, the court need only address Defendant's summary judgment Motion.

## BACKGROUND

Several issues must be addressed at the outset. First, much of Plaintiff's response to Defendant's statement of Undisputed Material Facts does not comply with Central District of Illinois Local Rule 7.1(D)(2)(b). The Local Rules require parties to support any claims that a fact is disputed and material "by evidentiary documentation referenced by specific page" and "include as exhibits all cited documentary evidence not already submitted" by the moving party. Plaintiff's response broadly references the Declaration of Brent D. Holmes, but he fails to include a specific page reference or citation for all disputed material facts, with the exception of fact 14, which includes citations to specific paragraphs of the Declaration.

It is well established that "district courts may require strict compliance" with their local rules. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020). Because Plaintiff failed to provide specific citations for the facts he claims are disputed and material, except for fact 14, the court will only evaluate his argument of disputed material fact for fact 14.

Next, Plaintiff provides approximately 60 "Additional Material Facts" after his response to the Undisputed Material Facts. None of those additional facts have citations to evidentiary documentation with specific page reference(s) as required by Local Rule 7.1(D)(2)(b)(5). Instead, at the end of the section, Plaintiff writes: "The evidentiary bases

for these paragraphs are contained in the Declaration of Brent D. Holmes[,]" which was attached to his Response. Defendant notes this issue in its Reply and does still respond to the statement as a precaution, but asks the court to strike the entire statement of Additional Material Facts.

Merely stating that the evidentiary bases for undisputed material facts are contained within an attached exhibit is insufficient and unhelpful. Accordingly, the court will disregard Plaintiff's Additional Material Facts and Defendant's response thereto. See *id.*; *Penny v. Lincoln's Challenge Acad.*, 822 F. App'x 497 (7th Cir. 2020) (affirming district court's decision to only consider at summary judgment the material facts supported by record citations pursuant to local rules).

Finally, Plaintiff takes issue with the Declaration of Ellen Scot McIntosh (#112-1) and objects to almost all of Defendant's Undisputed Material Facts that are supported by her Declaration. Plaintiff argues the Declaration is self-serving and conclusory as to the "contracts and rules, etc." and argues it is improper opinion unsupported by documentation and without proper foundation. He states that McIntosh "has not submitted the rules for the rebates" or the "contract between Defendant and Deutsch[,]" or any documents regarding how rebate submissions are reviewed and the basis for those decisions. He calls the Declaration "useless from an evidentiary perspective" and states it should be disregarded because "[i]t is for the Court to determine what

constitutes a contract and the contractual terms between [Defendant] and Deutsch, not for [Defendant] to submit a self-serving Declaration containing conclusions and lay opinions of law."

Defendant makes four points in response: (1) the McIntosh Declaration was previously filed in this case in June 2021, (2) Plaintiff's argument is disingenuous because Defendant produced the referenced contracts in discovery, (3) the argument is not sufficiently developed, and (4) the argument is "strange considering [Plaintiff] is seeking summary judgment on both of his claims . . . by citing only to his own declarations."

McIntosh states in her Declaration that she is employed by Defendant as a Senior Manager for Client Accounts – Rebates, competent to provide the Declaration, familiar with the matters discussed in her Declaration based on her role, and attests to the contents as true and correct. The nature of Defendant's business, its interactions with clients, and services performed with respect to rebates appear well within the scope of her role. Accordingly, the court will not disregard the McIntosh Declaration, despite Plaintiff's attempts to denigrate it as self-serving. *Jones v. Lamb*, 124 F.4th 463, 468 (7th Cir. 2024) ("At summary judgment, the district court could not disregard Jones's declaration merely because it served his interests."); *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("[A]ffidavits . . . by their nature are self-serving. As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." (citation omitted)); *see also Durukan Am., LLC v. Rain Trading,*

*Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015) ("In the summary judgment context, we long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is self-serving." (cleaned up)). Plaintiff's objections are overruled.

Accordingly, the following background facts are taken from Defendant's statement of Undisputed Material Facts and exhibits attached to the briefing. The court will only consider those facts properly before it.

<u>Factual Background</u>

*The Parties*

Plaintiff Brent D. Holmes is a partner at the law firm Heller, Holmes & Associates in Mattoon, Illinois. Plaintiff was previously represented in this case by his law partner, H. Kent Heller.[2] Plaintiff and Heller had worked together since 1978. Heller has filed at least three proposed class actions with Plaintiff as the named plaintiff in the last four years, including this case, one against Citibank relating to the transfer of Plaintiff's mortgage to another servicer and an $18 late fee, and one against Deutsch Family Wine & Spirits ("Deutsch"). In this case, Plaintiff and Heller claimed that the proposed Illinois class was entitled to $363 million in damages, plus attorney's fees for their firm. They also claimed that they are entitled to nearly $2 billion plus attorney's fees for their "nationwide class action breach of contract damages."

---

[2] H. Kent Heller filed a Motion to Withdraw (#139), which was granted on January 16, 2025.

Defendant contracts with its clients for the processing and servicing of rebates. In this case, Defendant contracted with Deutsch to provide services relating to rebate programs that included the rebate for Yellow Tail wines. The rules for the rebates, such as distribution, age requirements, purchase requirements, and applicable dates, are set by the client; Defendant has no input regarding those rules. Deutsch set all the terms for the Yellow Tail wine rebate at issue, including the locations where such rebate would be offered, the age requirements for the rebate, and the expiration date.

After receiving rebate forms submitted by consumers, Defendant processes them and either (1) sends the consumer an "invalid" postcard (and email, if an email address is provided), or (2) sends the consumer a rebate check and notifies the client (here, Deutsch) to reimburse Defendant's invoice for the amount of the rebate. Defendant did not create or ship the Yellow Tail wine rebate forms, which are located on "neck tags" that hang from the bottles of Yellow Tail wine.

The front of the Yellow Tail wine rebate form at issue had the following appearance:



The back of the rebate form contained the following text: "OFFICIAL MAIL-IN REBATE OFFER FORM" and a block of text on the right side beginning with the word "Terms." The parties disagree as to whether the block of text on the right side consists of contractual "terms" in a legal sense. Regardless, Plaintiff submitted the following rebate form to Defendant, with the exception of the yellow highlight on top of the date of birth and the court's redactions[3], with a postmark date of August 19, 2019[4]:



The text states, in part: "Mail rebate claim to: CMS Rebate Services, DFWS-03692, PO Box 426013, Del Rio, TX 78842-6013."

---

[3] The court has redacted Plaintiff's personal information. The redaction process yielded a blurrier image than what was submitted.

[4] Plaintiff's response to this fact does not include reference to evidentiary documentation with a citation. It is also a verbatim recitation of his objection to all facts stemming from the McIntosh Declaration. Thus, Plaintiff has not genuinely disputed that he submitted the rebate form as depicted, minus the yellow highlight, with a postmark date of August 19, 2019.

The parties also dispute whether Plaintiff read the text on the back of the rebate form. Defendant contends that he did, citing his response to Defendant's second request for admission. The request asked of Plaintiff: "Admit that you did not return the Yellow Tail Wine after reading the printing on the back of the Rebate Tag." Plaintiff answered:

> I accepted the offer printed on the front of the rebate tag which was the only part of the rebate tag visible the [sic] decision to accept the written offer and purchase the Yellow Tail wine. After purchasing the Yellow Tail wine, I subsequently saw printing on the back of the rebate tag. There was nothing printed on the back of the rebate tag which contained anything about returning the Yellow Tail wine. There was no reason to attempt to return the Yellow Tail wine and I did not return the Yellow Tail Wine.

Plaintiff counters the assertion that he "read the terms on the back of the form after purchasing the wine," by referring to paragraphs 17 through 21 of his Declaration. Therein he describes that when he returned home and turned over the rebate tag, he "saw there was printing on the back of the tag." He states: "Most of the printing on the back of the tag was so small that I could not make out much of the wording on the right side." Plaintiff contends he "did not read the tiny print contained on the right side of the back of the rebate tag that is attached to Defendant's Motion as Exhibit A-1, except that I did look for the address to mail the cash rebate." Plaintiff then states he "mailed the rebate submission prior to August 31, 2019, along with the sales receipt showing my purchase of the 6 bottles of Yellow Tail wine, to the address stated." Clearly, Plaintiff read at least *some* of the text on the back.  Otherwise, he would not know where to mail the completed rebate form. Construed in the light most favorable to Plaintiff, the court will only consider Plaintiff having read only the mailing address listed in the block of text on the right side of the back of the tag.

The text on the back further states "OFFER EXPIRES 8/31/19[.]" The block of text provides, in part:

> Coupon valid from 6/1/19 to 8/31/19. . . . Must be 21 years of age or older. . . . Rebate claim must be postmarked no later than 15 days after the expiration date and received no later than 21 days after the expiration date. . . . Requests not in compliance with these Terms will not be honored or acknowledged.
> Plaintiff listed his date of birth on his rebate form as "9/12/15." Plaintiff's real

birth year is 1953. Plaintiff stated in this litigation that the "9/12/15" date of birth he listed was a "scrivener's error."

In response to Plaintiff's rebate submission, Defendant sent the following "invalid" postcard ("Denial Postcard") to Plaintiff on or about September 5, 2019, notifying him that his rebate submission was not valid because "SUBMITTER DID NOT PROVIDE VALID AGE INFORMATION." [5]



---

[5] Defendant notes, and Plaintiff does not dispute, that the handwriting on the top right corner of the postcard was added by Plaintiff.

The Denial Postcard indicated Plaintiff could resubmit the rebate request by "immediately send[ing] this card along with the missing information or item(s)" to Defendant. Plaintiff did not respond to Defendant until late December 2019. Specifically, Plaintiff and Defendant exchanged emails on December 18, 20, 23, and 24, 2019, regarding the rebate. Plaintiff initially refuted that the rebate required any date of birth. Once shown the rebate form with the date of birth requirement, Plaintiff argued that he provided "proof of legal age at the register" and demanded he be paid the rebate. Plaintiff and Defendant also had telephone calls on December 18 and 20, 2019, regarding the Yellow Tail rebate.[6] Plaintiff did not attempt to return the Yellow Tail wine and the wine was consumed.

## ANALYSIS

### Breach of Contract

Defendant seeks summary judgment on the breach of contract claim, arguing that there was no valid and enforceable contract between it and Plaintiff.

The elements of a breach of contract claim in Illinois are: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (quoting *Henderson-Smith & Assocs.*,

---

[6] Defendant mailed a copy of the audio recordings on a flash drive to the court and opposing counsel. The court has reviewed these recordings.

*Inc. v. Nahamani Fam. Serv. Ctr. Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)).[7] A contract is valid and enforceable if there is an offer, acceptance, and consideration. *Id.* (quoting *Fuqua v. SVOX AG*, 13 N.E.3d 68, 80 (Ill. App. Ct. 2014)). Under Illinois law, if the basic facts are undisputed, whether a contract was formed is a question of law and is particularly well-suited for disposition on summary judgment. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997).

As to the first element, Defendant argues that there is no evidence that Defendant made any sort of offer to Plaintiff because: (1) it was not involved in the creation and was not mentioned on the front of the neck tag; (2) the back of the tag indicates any offer came from Deutsch (and not Defendant); and (3) Defendant's role was limited to that of third party processor for Deutsch. Then, assuming arguendo there was an offer, Defendant argues Plaintiff did not accept that offer, because his purported acceptance did not conform exactly to the offer since he failed to provide valid age information. Finally, Defendant argues there is no evidence that any consideration flowed from Plaintiff to Defendant, since the money paid for the wine was paid to the store it was purchased at, not to Defendant.

Plaintiff devotes just one paragraph in his Response to argue that he is entitled to recover on this claim. Curiously, Plaintiff first seems to imply that because the court

---

[7] This case was originally removed from Illinois state court under diversity jurisdiction and no party raises a conflict of law issue. Thus, Illinois substantive law governs both the remaining claims. *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012) ("'[W]hen neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.' *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991).").

previously found that he stated a claim for breach of contract, that is also enough to

withstand summary judgment. That contention is rejected outright. See *Next Payment

Sols., Inc. v. CLEAResult Consulting, Inc.*, 2019 WL 955354, at *17 (N.D. Ill. Feb. 27, 2019)

(acknowledging a plaintiff "cannot survive summary judgment by relying on

allegations that survived a motion to dismiss").

> The remainder of Plaintiff's argument on this particular claim is as follows:

> Plaintiff's Declaration (Exhibit 1 attached to this Motion), the neck tag,
> Exhibit 2, and Defendant's acknowledgement that Plaintiff submitted a
> valid birthdate, are evidentiary support for Plaintiff's breach of contract
> claim. Further, all interactions between the parties involve solely Plaintiff
> and [Defendant] or its agents. In fact, on another occasion when Plaintiff
> actually received a cash rebate after purchasing Yellow Tail wine, the
> check was from Inmar. Exhibit 1, paragraph 65. All elements for breach of
> contract have been satisfied. See Exhibits 1 and 2 of this Response.

> The court can discern only one other potentially responsive argument. For

context, Defendant at one point argues that the back of the tag contains an instance of a

first-person point of view, stating, "**We** will only use your data in accordance with our

**Privacy** Statement, which you can view at http://www.**deutschfamily**.com/privacy-

policy/." (emphases added). Defendant argues, and the court agrees, that this language

indicates that Deutsch is the offeror—not Defendant. Plaintiff responds that it is a

"frivolous claim that somehow the consumer should have seen the fine print listing a

website to determine who might be making this rebate offer. Defendant does not

explain how the consumer, standing in the aisle, deciding whether to purchase the

Yellow Tail wine, would have been aware of any website or would have had the means

to access the website while shopping[.]"

The court characterizes this as "potentially responsive" because it is made in a section wherein Plaintiff argues the "so-called terms on the reverse of the rebate tag which were invisible to the Plaintiff at the time of purchase, buried in tiny type on the reverse and where the Plaintiff had not been alerted to their existence, are unenforceable as a matter of law on the basis of procedural unconscionability." It is unclear how or why that matters in determining whether Defendant made an offer to Plaintiff. As Defendant notes, whether certain terms on the tag are unenforceable as procedurally unconscionable has no bearing on whether Defendant made a legal offer to contract to Plaintiff.

Finally, instead of directly responding to Defendant's arguments, Plaintiff incorporates by express reference his own summary judgment Motion and arguments therein. That approach is improper; Plaintiff was required to satisfy his burden through his Response and the record on Defendant's Motion. See *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 854 (N.D. Ill. 2011) ("Although Plaintiffs may attempt to satisfy their burden on this issue via their pending cross-motion for summary judgment, such an approach is improper. As stated earlier, cross-motions for summary judgment must be treated separately. Thus, after a defendant has properly moved for summary judgment on an issue, a plaintiff must satisfy his burden through his response and the record on defendant's motion, not a cross-claim for summary judgment."). Thus, the

arguments made in Plaintiff's own Motion will not be considered as part of his

Response to Defendant's Motion.[8]

Plaintiff was required to respond to the specific arguments made by Defendant

in its Motion that Defendant did not make any kind of offer to Plaintiff. He did not. His

argument about viewing the website is irrelevant, and the rest of his arguments are

underdeveloped, conclusory, and confusing.[9] That is insufficient to withstand summary

---

[8] It matters little, however, because the outcome would be the same even considering
Plaintiff's summary judgment Motion. That Motion does not address whether
Defendant made a legal offer to Plaintiff, and simply states that he "accepted that offer
and provided valuable consideration by paying a total of $39.08, including sales tax, for
the 6 bottles of wine." In Defendant's Response, it raises the exact same arguments as it
does in its summary judgment Motion, i.e., no valid and enforceable contract. In
Plaintiff's Reply, he yet again fails address the arguments as to whether Defendant was
the offeror and summarily states that he accepted the offer and supplied consideration
by purchasing the wine. Plaintiff does respond regarding consideration, first arguing
that a lack of consideration is an affirmative defense, which Defendant waived by not
including it as an enumerated affirmative defense in its Answer. That is incorrect.
"[T]he defense of want of consideration would not constitute an affirmative defense. It
does not give color to the plaintiff's claim, but rather attacks the sufficiency of that
claim." *Space v. E.F. Hutton Co.*, 544 N.E.2d 67, 69 (Ill. App. Ct. 1989); *Direct Energy Bus.,
LLC v. City of Harvey*, 192 N.E.3d 591, 596-97, as modified on denial of reh'g (Ill. App. Ct.
July 21, 2021) ("In short, the [defendant's] position is not in the nature of an affirmative
defense but rather that [the plaintiff] did not produce facts establishing that a contract
was formed. As the plaintiff and moving party, [the plaintiff] was required to show that
a valid and enforceable contract was formed between the parties[.]"). Plaintiff also
argues that the consideration did not need to flow directly to Defendant, citing as
support *In re Reliable Mfg. Corp.*, 703 F.2d 996, 1000 (7th Cir. 1983). But that case is
inapposite as it deals with enforceability of security interests and how "a security given
in consideration for the obligation of a third party clearly effectuates" the "giving of
value requirement" under the Uniform Commercial Code. See *id.*

[9] This includes Plaintiff's agency arguments. In the Introduction section of Plaintiff's
Response, he states that Defendant, "as the actual or apparent agent, can be sued for
breach of contract as it held itself out to the consumer, including [Plaintiff], as the entity
responsible for making the offer of the cash rebate and then processing and paying the
cash rebate." But in the Argument section, the agency arguments, such as they are,

judgment. Plaintiff has thus failed to make a sufficient showing that there was a valid and enforceable contract between him and Defendant—a required element of his breach of contract claim. Accordingly, judgment must be entered in favor of Defendant and against Plaintiff on Plaintiff's breach of contract claim (Count VI).

<u>Illinois Consumer Fraud Act</u>

Defendant seeks summary judgment on the ICFA claim, first arguing it is not actionable because it is just a repackaged breach of contract claim, and then as to the merits, because there is no evidence of a deceptive act or practice, materiality, intent, or damages.

Beginning with the threshold question, Defendant argues that the ICFA claim fails as a matter of law because it is based on the same factual foundation as the breach of contract claim and is therefore not a distinct, actionable claim. It argues that all of Plaintiff's "superfluous theories in support of his attempt to transform his breach of contract claim into a consumer fraud claim" are just restatements of his breach of contract claim using the language of fraud.

In response, Plaintiff attempts to distinguish cases cited by Defendant and argues that his breach of contract and ICFA claims can be brought together. He then argues, inter alia:

> Plaintiff's ICFA claim implicates consumer protection concerns. This is not simply a case where the Defendant entered into an agreement with Plaintiff to pay the cash rebate and then did not do so. The ICFA claim involves much more and seeks to carry out the legislative purpose which

_____

either do not explain their relevance to the breach of contract claim, or are made with specific reference to the ICFA claim.

is to provide broad consumer protection against ["]unfair or deceptive acts or practices . . . ." 815 ILCS 505/2.

Defendant replies that Plaintiff did not address the operative question under the cases it cited, which is whether Plaintiff's ICFA claim rests on the same factual foundation as his breach of contract claim. Because the answer to that question is "yes," it argues, the claim must be dismissed. Defendant also argues that every ICFA claim implicates consumer protection concerns, but that does not change well-established case law that ICFA claims cannot be predicated on the same factual foundation as a breach of contract claim.

"A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005)). A plaintiff cannot simply call a defendant's failure to fulfill its contractual obligations "consumer fraud" or "deception." *Avery*, 835 N.E.2d at 844 (quoting *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 993 (Ill. App. Ct. 2000)). A "deceptive act or practice" must involve "more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.'" *Id.* (quoting *Zankle*, 724 N.E.2d at 993).

First, Plaintiff mischaracterizes Defendant's argument. Defendant is not arguing that it is impossible for Plaintiff to bring both a breach of contract and ICFA claim at the same time—it is essentially arguing that Plaintiff has done nothing to distinguish between the two claims in this case or establish that there is anything actionable under

the ICFA aside from the same conduct alleged as to the breach of contract claim. To those arguments, Plaintiff is nearly silent. It is simply not enough for Plaintiff to say that the "ICFA claim involves much more" than Defendant's alleged breach of contract. What *does* it involve? Plaintiff's arguments are unconvincing and his ICFA claim "is categorically nonactionable" because he does nothing more than reassert his breach of contract claim using the language of fraud. See *Philadelphia Indem. Ins. Co.*, 771 F.3d at 402 ("Western Capital's claim is nothing more than an allegation of breach of contract dressed up in Consumer Fraud Act clothing. . . . Accordingly, the claim is categorically nonactionable.").

But even overlooking the threshold issue, the ICFA claim fails for effectively the same reason—Plaintiff does not show that Defendant engaged in any deceptive act or practice.

For an ICFA claim, a plaintiff must show that: "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Spiegel v. EngageTel Inc.*, 372 F. Supp. 3d 672, 687 (N.D. Ill. 2019) (quoting *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018)).

Plaintiff makes numerous—and mostly irrelevant—arguments, including: (1) that Defendant is liable even if it claims that it was acting as an agent for another, (2) the "ICFA provides broad protection to consumers like [Plaintiff]," (3) that Defendant concealed that payment of the cash rebate would be denied despite signing the

certification on the back of the tag, (4) that Defendant attempted to "add a term not contained" on the rebate tag by informing Plaintiff he had to immediately respond to correct his "scrivener's error," and finally, he suggests (5) that Defendant's "fraud continues" by "assert[ing] the spurious defense" that Plaintiff did not attempt to return the wine.

Defendant responds that Plaintiff: (1) did not introduce any admissible evidence that a reasonable consumer would be misled by any of Defendant's conduct; (2) failed to develop any argument involving Defendant's intent; and (3) did not respond to the argument that he cannot recover the purchase price of the wine, thereby waiving it and limiting his alleged damages to the $9 rebate.

*Deceptive Act or Practice*

Defendant argues there is no evidence of a deceptive act or practice since Plaintiff has only introduced evidence to support that *he* was deceived about whether he could correct a "scrivener's error" after the rebate period closed, which does not meet the reasonable consumer standard required for determining whether an act was deceptive under the ICFA. It also argues Plaintiff's theory is meritless aside from that evidentiary issue, because, inter alia, if he argues the rebate terms were deceptive because they "conceal" that a customer is not allowed to correct a "scrivener's error" after the rebate period has ended, then Defendant is not implicated because it did not draft the terms or create the rebate offer form.

Under the ICFA, "a practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639,

646 (7th Cir. 2019) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)).

"Courts apply a 'reasonable consumer' standard to analyze the likelihood of

deception." *Id.* (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)).

"[T]he allegedly deceptive act must be looked upon in light of the totality of the

information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884

(7th Cir. 2005).

      Plaintiff does not respond to this argument or address the reasonable consumer

standard at all. It is also not entirely clear what all Plaintiff argues the deceptive acts or

practices actually were. Plaintiff states that "Defendant concealed from Plaintiff that

payment of the cash rebate would be denied" despite certifying that he was over 21

years of age. But he also alludes to the deceptive act(s) being: including terms on the

back of the neck tag without indicating on the front of the tag that additional terms

applied, (2) rejecting the rebate "at the sole discretion of the Defendant," (3) that "a

scrivener's error could not be corrected[,]" and (4) adding "a term not contained on the

front of the rebate tag or on the reverse" that Plaintiff had to immediately respond to

provide valid birthdate information. Regardless, by failing to address or explain how

any of these acts created a likelihood of deception or had the capacity to deceive a

reasonable consumer, Plaintiff has forfeited the argument.[10]

---

[10] To the extent that Plaintiff improperly incorporates by reference his own summary
judgment Motion to make these arguments, it does not help him here either, because he
does not address how any alleged deceptive acts created a likelihood of deception or
had the capacity to deceive under the reasonable consumer standard.

Notwithstanding, no reasonable jury could find that there was any deceptive act by Defendant. Considering the totality of the information available to the Plaintiff, the front of the tag informs consumers that a rebate is available by mail, but it does not provide more instruction on how to obtain the rebate, such as a mailing address. No reasonable consumer would believe that the front of the tag included all information needed to obtain the rebate. Every reasonable consumer would understand that there must be more information available somewhere, and the very next reasonable step would be to turn over the tag in search of the missing information. The back of the tag did in fact contain that information. The back of the tag included fillable form fields for the consumer's information and contained the related information, e.g., mailing address, for the rebate offer. Notably, that included the statement: "Requests not in compliance with these Terms will not be honored or acknowledged." Plaintiff's request was denied because "SUBMITTER DID NOT PROVIDE VALID AGE INFORMATION." However, Plaintiff was able to correct his "scrivener's error" and resubmit by "immediately send[ing] [the Denial Postcard] with the missing information[.]"[11]

In sum, Plaintiff has not argued—let alone shown to any degree—that Defendant engaged in any kind of deceptive act, or that a reasonable consumer would have been deceived by anything about the neck tag. Accordingly, judgment must be entered in favor of Defendant and against Plaintiff on Plaintiff's ICFA claim (Count II).

---

[11] Again, Plaintiff's arguments that the "so-called terms" are procedurally unconscionable and thus unenforceable, is a matter of contract law, and Plaintiff has not argued or explained how or why this informs the ICFA claim analysis.

Defendant's Motion for Summary Judgment (#112) is therefore GRANTED in full. Because summary judgment is granted on both remaining claims for the reasons above, Plaintiff's Motion for Summary Judgment (#117) is DENIED.

## MOTION FOR SANCTIONS

Defendant has separately moved for sanctions against Plaintiff under both Rule 11 and 28 U.S.C. § 1927, primarily for filing a frivolous summary judgment motion and Briefs[12] that did not address each element of his two remaining claims. It argues that sanctions are warranted because a reasonable inquiry into the law would have revealed that Plaintiff's Briefs were frivolous because they failed to include legal citations and evidence to support at least one element of each claim on which he sought summary judgment. Specifically, as to the ICFA claim, Defendant argues, inter alia: Plaintiff's Briefs failed to address (1) materiality, (2) intent, and (3) likelihood of deception or capacity to deceive. It argues as to the breach of contract claim that Plaintiff (1) introduced no evidence of consideration, (2) introduced no evidence of an offer by Defendant, and (3) failed to adequately address the element of acceptance.

Defendant also seeks sanctions for Plaintiff's false statement that Defendant "tried to perpetuate a fraud upon the Court by misrepresenting the size of the rebate tag" by enlarging its size in the exhibit attached to its summary judgment Motion. It

---

[12] The "Briefs" consist of Plaintiff's Motion for Summary Judgment and supporting brief, his Reply in support of that Motion, and his Response to Defendant's Motion for Summary Judgment.

argues that the assertion is false and frivolous, which required Defendant to address it in an unnecessary surreply.

Further, Defendant argues that sanctions are warranted against both Plaintiff Holmes in his personal capacity under Rule 11 and former counsel Heller under § 1927.[13] It argues sanctions against Holmes are appropriate because he is an attorney and partners at the same firm as Heller, so Holmes is "certainly aware of (if not closely involved in) his filings in this suit." It argues that Heller violated § 1927 because any reasonably careful attorney would have known after appropriate inquiry that the Briefs did not properly support each element of the remaining claims, but even if he did not, he should have been aware of the deficiencies after seeing Defendant's summary judgment Motion.

Plaintiff responds that the sanctions motion is "designed to disrupt the orderly administration of justice in this case" and premature because the summary judgment motions were pending when it was filed. He argues he is entitled to summary judgment on the ICFA claim, regurgitating some of his arguments in his Briefs, including that Defendant "is within the broad definition of 'person'" under the ICFA. He also states, inter alia, that "materiality has been addressed throughout this litigation," "intent has been part of this case throughout," and that the likelihood of deception or capacity to

---

[13] As noted, H. Kent Heller moved to withdraw as counsel in December 2024, citing his intent to retire from the practice of law. Two other attorneys, Rodney Smith and Daniel Jones, have also appeared on behalf of Plaintiff. Neither attorney has filed anything beyond their notice of appearance. Defendant is not seeking sanctions against either Smith or Jones.

deceive "is evident from the evidence presented and the inferences to be drawn therefrom." Then, as to the breach of contract claim, Plaintiff again restates his theories in his Briefs as to why he believes Defendant is liable on that claim. Plaintiff closes by asking the court to "sua sponte issue sanctions against IBS for its frivolous Motion for Sanctions."

Pursuant to 28 U.S.C. § 1927:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Sanctions under § 1927 are meant to compensate the party that has been injured by a lawyer's bad-faith conduct and to compel the lawyer to bear the costs of his own lack of care." *Tillman v. New Line Cinema*, 374 F. App'x 664, 666-67 (7th Cir. 2010). Section 1927 does not require a showing that counsel moved with subjective bad faith, rather objective bad faith is sufficient. *Boyer v. BNSF Railway Co.*, 824 F.3d 694, 708 (7th Cir. 2016) ("A finding of subjective bad faith on the part of the offending attorney will support the imposition of sanctions under section 1927, but such a finding is not necessary; 'objective bad faith' will also support a sanctions award."). The Seventh Circuit explained this standard in *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985):

If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law.

26

The court also discussed the interplay between § 1927 and Fed. R. Civ. P. 11, noting that "[a] lawyer has a duty, which the recent amendment to Rule 11 emphasizes, to limit litigation to contentions 'well grounded in fact and … warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *Id.* (quoting Fed. R. Civ. P. 11(b)(2)). Importantly, the court stated, "A lawyer who pursues a plausible claim because of the costs the suit will impose on the other side, instead of the potential recovery on the claim, is engaged in abuse of process." *Id.*

Defendant's Motion meets Rule 11's procedural requirements: The request for sanctions describes the specific conduct that violates Rule 11(b) and was filed as a separate motion on October 29, 2024, and it contained evidence of Defendant's compliance with the 21-day safe harbor period by including as an exhibit Defendant's letter dated August 22, 2024, outlining the issues in great detail. See Fed. R. Civ. P. 11(c)(2). Plaintiff contends the motion was prematurely filed, but the court disagrees, because Rule 11 motions should be filed "as soon as practicable" after counsel discovers a Rule 11 violation. *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992).

Plaintiff cannot rely on the court, or Defendant, to make his arguments for him. He cannot merely say that elements of his claim have "been addressed throughout this litigation" or "been a part of this case throughout," or that an element is "evident from the evidence presented and inferences to be drawn therefrom" in response to a sanctions motion and hope it carries the day. Plaintiff failed to meet his burden. Defendant warned him of this in its Rule 11 letter.

A reasonable inquiry into the law would have immediately revealed that summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential" to their case and on which they bear the burden of proof. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Only two, straightforward claims remained in this case for resolution at summary judgment: a breach of contract claim and the ICFA claim. Since both parties here moved for summary judgment on both claims, Plaintiff had multiple chances to "put up or shut up" and show what evidence he had in support of his claims. See *Koszola*, 385 F.3d at 1111 (quoting *Johnson*, 325 F.3d at 901). Instead, Plaintiff left multiple elements and arguments unaddressed. Plaintiff lacked evidence to support at least one element of each claim, instead circumventing his burden by rehashing seemingly irrelevant theories without any attempt to explain how those theories would meet his burden. Even if Plaintiff had not been aware of the ubiquitous, well-known summary judgment standard, as Defendant notes, he was certainly aware of it after he saw the subsequent briefing and the Rule 11 letter. Despite being warned, Plaintiff chose to proceed, knowing that his Briefs did not meet a basic requirement to prevail on summary judgment.

Plaintiff has yet again wasted the court's time and resources. The court was required to devote valuable and scarce judicial resources here, taking time away from approximately 150 other pending motions before this court, forcing those litigants to

wait even longer for resolutions in their cases. The court finds that sanctions are warranted for the reasons above against Plaintiff's counsel, H. Kent Heller.

Sanctions are generally imposed on counsel only when the attorney has failed to research the law, with the rationale being that the client should not bear "the sanction for filing papers which violate Rule 11 by being unsupported by existing law, or as an attempt to modify well-settled law." *Borowski v. DePuy, a Div. of Boehringer Mannheim Co.*, 850 F.2d 297, 305 (7th Cir. 1988). "Courts seek to allocate sanctions between the attorney and the client according to their relative responsibility for the Rule 11 violation." *Id.* Here, Defendant argues that because Heller and Holmes are both attorneys and partners at the same firm, Holmes "is certainly aware of (if not closely involved in) his filings in this suit." While the court certainly shares the same impression, that is not sufficient to assess sanctions against Holmes personally. See *Widell v. Bd. of Educ. of City of Chicago*, 1988 WL 124362, at *1 (N.D. Ill. Nov. 9, 1988) ("[Rule 11] does permit sanctions against a client, however, but only where the client's direction is clearly related to the attorney's misconduct. When the evidence supports a finding that the client was behind the improper conduct, sanctions are appropriate against both attorney and client."). The court does not know whether Holmes bears any responsibility for the violations here.

Accordingly, Defendant's Motion for Sanctions is GRANTED. The court awards reasonable attorneys' fees and costs to defense counsel for their services in preparing their: Response to Plaintiff's Motion for Summary Judgment; Reply in support of Defendant's Motion for Summary Judgment; Surreply to Plaintiff's Motion for

Summary Judgment; Motion for Sanctions (excluding preparation of the Rule 11 letter); Motion for leave to file their Reply; the Reply in support of the Motion for Sanctions; and the attorneys' fee affidavit. Defendant is ordered to submit an affidavit with an itemized statement of attorneys' fees and costs for the same. These attorneys' fees and costs are to be paid by Plaintiff's counsel, H. Kent Heller.

IT IS THEREFORE ORDERED:

(1) Plaintiff's Motion to File Documents Under Seal (#115) is GRANTED. Docket entry #116 will remain under seal.

(2) Defendant's Motion for Summary Judgment (#112) is GRANTED in full. Summary judgment is granted in favor of Defendant and against Plaintiff on Count II (ICFA claim) and Count VI (breach of contract).

(3) Plaintiff's Motion for Summary Judgment (#117) is DENIED.

(4) Defendant's Motion for Sanctions (#132) is GRANTED. Defendant is ordered to submit an affidavit with an itemized statement of attorneys' fees and costs as directed in this Order.

(5) This case is terminated.

ENTERED on this 15th day of September 2025.

s/ *Colin S. Bruce*
COLIN S. BRUCE
U.S. DISTRICT JUDGE